No. 12-12386-EE

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**In re: CHECKING ACCOUNT OVERDRAFT LITIGATION**:

Shane Swift,
on behalf of himself and all others similarly situated,
Plaintiff-Appellee

v.

Bancorpsouth, Inc.,
Defendant-Appellant.

On Appeal from the United States District Court
for the Southern District of Florida
Case No. 1:09-MD-2036-JLK
Secondary Case No. 1:10-CV-23872-JLK

**BRIEF OF APPELLEE**

| | | |
|---|---|---|
| Stephen F. Rosenthal | Bruce S. Rogow | David M. Buckner |
| Aaron S. Podhurst | Bruce S. Rogow, P.A. | Stuart Z. Grossman |
| Robert C. Josefsberg | Broward Financial Ctr. | Robert C. Gilbert |
| Peter Prieto | 500 E. Broward Blvd. | Seth E. Miles |
| Podhurst Orseck, P.A. | Ft. Lauderdale, FL 33394 | Grossman Roth, P.A. |
| 25 W. Flagler St.-Ste. 800 | Tel.: (954) 767-8909 | 2525 Ponce de Leon |
| Miami, FL 33130 | | Blvd. |
| Tel.: (305) 358-2800 | | Suite 1150 |
| | | Coral Gables, FL 33134 |

**Counsel for Appellee**
**(Additional Counsel Listed on Signature Page)**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellees certify that, in addition to the names of persons and entities disclosed in Defendant-Appellant Bancorpsouth Bank's ("BancorpSouth") certificate of interested persons, the following persons have an interest in the outcome of the particular case on appeal:

Hacker, Sara C.

Streisfeld, Jonathan M.

Von Borke, Brett E.

Weinshall, Matthew

*s/Stephen F. Rosenthal*
Stephen F. Rosenthal, Esq.
Florida Bar No. 0131458

## STATEMENT REGARDING ORAL ARGUMENT

The Appellee submits that oral argument is unnecessary, since this case presents a straightforward application of existing law. Moreover, recent events appear to have mooted this appeal. The Court can decide this appeal on the briefs.

# TABLE OF CONTENTS

**PAGE**

Statement Regarding Oral Argument

Statement of Jurisdiction

Statement of the Issues

Statement of the Case ...................................................................................... 1

    I.     The District Court's Findings of Fact ..................................................... 2

    II.    Other Factual Matters That BancorpSouth Omits or Misstates ........... 7

Standard of Review ....................................................................................... 11

Summary of the Argument ............................................................................ 12

Argument ....................................................................................................... 15

    I.     Introduction ......................................................................................... 15

    II.    The District Court Properly Exercised its Discretion to Enjoin *Thomas* Pursuant to the All Writs Act .................................... 15

        A.    Neither a Pending Settlement Nor a Class Certification Order in *Swift* Was Required for the District Court to Invoke the All Writs Act ............................... 18

        B.    Violations of S.D. Fla. Local Rule 3.8 and BancorpSouth's Failure to Tag *Thomas* with the JPML Support the Injunction ................................................... 15

C.     All Writs Act Injunctions Do Not Require Consideration of the Factors Applicable to Traditional Injunctions ............................................................... 32

III.    The "First to File Rule" Provided an Independent Basis for the District Court to Enjoin *Thomas* ......................................................... 36

IV.    The Policy Favoring Class Action Settlements Should Not Support BancorpSouth's Deceptive Conduct ...................................... 45

V.    District Court's Use of an Order Drafted by Appellee's Counsel – at the Court's Direction – Is Permissible ......................................... 47

Conclusion ........................................................................................................ 50

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

PAGE

## CASES

*Adoma v. Univ. of Phoenix, Inc.*,
    711 F. Supp. 2d 1142 (E.D. Cal. 2010) .......................................................42

*Alabama v. U.S. Army Corp. of Eng'rs*,
    424 3d 1117 (11th Cir. 2005) ..........................................................22, 33, 34

\* *Bank of America Wage and Hour Employ. Litig. ("BofA")*,
    740 F. Supp. 2d 1207 (D. Kan. 2010) .....................................................*passim*

*Bank West, Inc. v. Baker*,
    446 3d 1358 (11th Cir. 2006) ..........................................................ix

\* *Cadle v. Whataburger of Alice, Inc.*,
    174 F.3d 599 (5th Cir. 1999) ..........................................................42

*Church of Scientology of Calif. v. U.S. Dept. of Army*,
    611 F.2d 738 (9th Cir. 1979) ..........................................................40

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    Civ. No. 10-3542, 2011 WL 5127813
    (E.D. Pa. Oct. 31, 2011) ..........................................................39, 40

*Faught v. Amer. Home Shield Corp.*,
    660 F.3d 1289 (11th Cir. 2011) ..........................................................19

*Florida Med. Ass'n v. U.S. Dep't of Health, Educ. & Welfare*,
    601 F.2d 199 (5th Cir. 1979) ..........................................................32, 33

*Grider v. Keystone Health Plan Cent., Inc.*,
    500 F.3d 322 (3d Cir. 2007) ..........................................................23, 24, 25, 47

*Hintergerger v. Catholic Health Sys.*,
No. 08-CV-9488, 2012 WL 125152
(W.D.N.Y. Jan. 17, 2012) ................................................................39

\*     *In re America Online Spin-Off Accts. Litig.*,
MDL Docket No. 04-1581, 2005 WL 5747463
(C.D. Cal. May 9, 2005) .....................................................18, 25, 26, 27, 28

*In re Baldwin-United Corp.*,
770 F. 2d 328 (2d Cir. 1985) ..........................................................33

*In re Checking Account Overdraft Litig.*,
694 F. Supp. 2d 1302 (S.D. Fla. 2010) ...................................................43, 44

*In re: Checking Account Overdraft Litig.*,
715 F. Supp. 2d 1358 (J.P.M.L. 2010) ...................................................8, 46

*In re Ford Motor Co.*,
471 F.3d 1233 (11th Cir. 2006) ..................................................18

*In re Gen. Motors Corp. Pick-Up Fuel Tank Prod. Liab. Litigation*,
134 3d 133 (3rd Cir. 1998) ..................................................27

\*     *In re Managed Care Litig.*,
236 F. Supp. 2d 1336 (S.D. Fla. 2002)..................................................*passim*

*In re Managed Care Litig.*,
246 F. Supp. 2d 1363 (J.P.M.L. 2003) ...........................................19, 26, 45

*In re Temple*,
851 F.2d 1269 (11th Cir. 1988) ..................................................19

*Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*,
299 F.3d 1242 (11th Cir.2002) ..................................................11

*Jones v. Jeld-Wen, Inc.*,
No. 07-22328-CIV, 2008 WL 2699434
(S.D. Fla. June 30, 2008) ..................................................40

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    342 U.S. 180, 72 S. Ct. 219 , 96 L.Ed. 200 (1952) .......................................39

\*    *Klay v. United Healthgroup, Inc.*,
    376 F.3d 1092 (11th Cir. 2004) ...................................... 11, 17, 32, 33, 34, 35

*Manuel v. Eonvergys Corp.,*,
    430 F.3d 1132 (11th Cir. 2005) .....................................................37

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*,
    675 F.2d 1169 (11th Cir. 1982) .....................................................38

*Merswin v. Williams Cos., Inc.*,
    Civ. No. 1:08-CV-2177-TWT, 2009 WL 249340
    (N.D. Ga. Jan. 30, 2009).............................................................40

*Moses H. Cohen Mem'l Hosp. v. Mercury Constr. Corp.*,
    480 U.S. 1 (1983)......................................................................45

*Murphy v. Reebok Int'l, Ltd.*,
    Case No. 4:11-cv-214-DPM, 2011 WL 1559234
    (E.D. Ark. Apr. 22, 2011).............................................................21

*Negrete v. Allianz Life Ins. Co.*,
    523 F.3d 1091 (9th Cir. 2008) .........................................23, 24, 25

*Orthmann v. Apple River Campground, Inc.*,
    765 F.2d 119 (8th Cir. 1985) .......................................................40

*Retirement Sys. of Ala. v. J.P. Morgan Chase & Co.*,
    386 F.3d 419 (2nd Cir. 2004) .......................................................19

*Scardelletti v. Debarr*,
    265 F.3d 195(4th Cir. 2001) .....................................................35, 36

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011)..............................................46

*Smith v. Bayer Corp.*,
    \_\_\_ U.S. \_\_\_, 131 S. Ct. 2368 (2011) ..........................................................19

*Smith v. SEC*,
    129 F.3d 356 (6th Cir. 1997) ......................................................11, 36, 37, 39

*Thomas Betts Corp. v. Hayes*,
    222 F. Supp. 2d 994 (W.D. Tenn. 2002) ...............................................*passim*

*Trombley v. Nat'l City Bank*,
    826 F. Supp. 2d 179 (D.D.C. Dec. 1, 2011) ..................................................46

*U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*,
    920 F.2d 487 n.6 (8th Cir. 1990) ...........................................................11, 36

*U.S. v. Ala. Dept. of Mental Health and Mental Retardation*,
    673 F.3d 1320 (11th Cir. 2012) .............................................................11, 25

*U.S. v. Brown*,
    342 F.3d 1245 (11th Cir. 2003) ...................................................................33

*Vallier v. Am. Fid. Assur. Co.*,
    No 08-2267, 2008 U.S. Dist. Lexis 70672
    (D. Kan. Sept. 16, 2008) ..............................................................................27

## STATUTES

28 U.S.C. §1292(a)(1)..........................................................................................ix

28 U.S.C. §1332(a) ..............................................................................................24

28 U.S.C. §1404 ..................................................................................................16

28 U.S.C. §1407 ..............................................................................20, 27, 30, 45

28 U.S.C. § 1651 ..............................................................................................x, 12

28 U.S.C. §1651(a) ...................................................................16

## **<u>RULES</u>**

Fed. R. App. P. 26.1 ...............................................................C-1

Fed. R. Civ. P. 23(a) and (b) ....................................................41

Fed. R. Civ. P. 23(e).....................................................24, 27, 34

Fed. R. Civ. P. 65 .....................................................................34

Fed R. Civ. P. 65(c).................................................................35

Fed. R. Civ. P. 65(d) ...............................................................36

JPML R. 7.1 .......................................................................12, 31

S. D. Fla. Local R. 3.8................................................*passim*

## <u>STATEMENT OF JURISDICTION</u>

Prior to several events that occurred in the month of June, the Appellee would have agreed with the Appellant's Statement of Jurisdiction that this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1).  The recent events described in the Statement of Facts, however, give rise to significant doubt whether the controversy underlying the injunction on appeal remains live.  If the case has become moot, this Court lacks jurisdiction.  *See, e.g., Bank West, Inc. v. Baker*, 446 F.3d 1358, 1363-64 (11th Cir. 2006).

## STATEMENT OF THE ISSUES

1.    Whether the district court properly exercised its discretion in enjoining Appellant and its counsel from engaging in further proceedings in *Thomas et al. v. BancorpSouth Bank*, W.D. Ark. Case No. 1:12-cv-01016-RTD ("*Thomas*") pursuant to the All Writs Act, 28 U.S.C. § 1651.

2.    Whether the district court properly exercised its discretion in enjoining Appellant and its counsel from engaging in further proceedings in *Thomas* pursuant to the "first to file" rule.

Appellant BancorpSouth Bank's ("BancorpSouth") recitation of the factual and procedural history germane to the Court's resolution of the issues on appeal is incomplete. This Court should be informed by the extensive findings of fact the district court made in entering the injunction, facts which BancorpSouth wishes to avoid. Therefore, Appellee Shane Swift ("Swift") furnishes this Court with the entirety of the district court's findings of fact.[1] Swift also addresses several other factual matters BancorpSouth ignored, including recent developments which appear to have renderred this entire appeal moot.

On June 8, 2012, U.S. District Judge Robert Dawson of the Western District of Arkansas entered an order vacating his prior preliminary approval of the settlement in *Thomas* and immediately transferring *Thomas* to the Southern District of Florida. *See* BancorpSouth's Rule 28(j) Letter (filed June 21, 2012); DE # 2770-1.[2] Shortly thereafter, on June 15, 2012, BancorpSouth formally terminated the *Thomas* settlement based on Judge Dawson's Order. *See* DE #

---

[1] The district court noted that its "factual findings are based on matters of record filed in *Swift* and *Thomas*, including the sworn declarations filed in *Swift* by counsel for Plaintiff . . . and counsel for BancorpSouth . . . , as well as the pleadings filed in *Thomas* . . . ." [**DE # 2666** at p.2 n.1].

[2] BancorpSouth notified a different panel of this Court (in Case No. 12-90024) of Judge Dawson's Order a week earlier, but delayed advising this panel of the same development.

2770-4. These developments appear to have rendered BancorpSouth's appeal moot.

BancorpSouth's appeal seeks to overturn Judge King's injunction against further settlement proceedings in *Thomas*, which no longer exist by virtue of Judge Dawson's Order and BancorpSouth's subsequent termination of the *Thomas* settlement. Despite requests by Appellee's counsel, BancorpSouth has refused to voluntarily dismiss this appeal. Therefore, Appellee files his brief in an abundance of caution, notwithstanding the apparent mootness of this appeal.

## I.   THE DISTRICT COURT'S FINDINGS OF FACT

The district court made the following findings in its Order Denying BancorpSouth's Motion to Stay and Granting Plaintiff's Emergency Motion to Enjoin Copycat Case Under the All Writs Act ("Injunction"):

> On May 18, 2010, Plaintiff Swift filed a nationwide class action complaint against Defendant Bancorpsouth in the Northern District of Florida, challenging BancorpSouth's overdraft fee policies and practices ("*Swift*"). *Swift* was the first-filed class action lawsuit challenging BancorpSouth's overdraft fee policies and practices. On October 20, 2010, over BancorpSouth's objection, the JPML transferred *Swift* to this Court as part of MDL 2036.

> *Swift* has been actively litigated in this Court for almost 18 months. Among other activities, this Court entered a comprehensive Scheduling Order on April 13, 2011 (**DE # 1340**), setting firm deadlines for the conduct of discovery and motion practice and a January 14, 2013 trial date. In accordance with the Scheduling Order, the Court denied BancorpSouth's motion to dismiss (**DE # 1305**); BancorpSouth filed its amended answer and affirmative defenses (**DE # 1693**); the Court denied BancorpSouth's *Daubert* motion (**DE #**

**2650**); and Plaintiff filed its Motion for Class Certification (**DE # 2271**), which is fully briefed and awaiting decision.[2] The parties also engaged in extensive pretrial discovery, including depositions and BancorpSouth's production of over 100,000 pages of documents, conducted pursuant to the Court's Scheduling Order that establishes a June 22, 2012 deadline for completing discovery.

> [FN2—"Pursuant to the Revised Scheduling Order (**DE #2475**) for the Fourth Tranche relating to class certification, class certification was fully briefed and ripe as of March 20, 2012."]

Moreover, for a period spanning July 2011 through December 2011, counsel for Plaintiff and BancorpSouth exchanged privileged and confidential settlement-related communications and data with the goal of ultimately engaging in mediation in *Swift*. (**DE # 2626 & 2625**). As part those settlement negotiations, Plaintiff retained an expert to complete a damage analysis calculation based on sample transactional data provided by BancorpSouth. Plaintiff's expert concluded that the class' damages were in excess of $42 million. *See* Supplemental Declaration of Jeffrey M. Ostrow (**DE # 2625**), at ¶ 19. In response, counsel for BancorpSouth stated that "the case would not settle and will go to trial." *Id.* Yet, during the same time period, the same counsel for BancorpSouth was participating in intensive settlement negotiations and mediations of a case with identical claims and a substantially similar class in Arkansas before re-filing the case in a race to the courthouse for a lower settlement. *See* Settlement Agreement (**DE # 2605-10**), at ¶ 40 (establishing $1.75 million "Settlement Fund" in *Thomas* for a proposed class that is broader in scope and for a longer time period than in *Swift*).[3]

> [FN3—"The proposed 'Settlement Class' in *Thomas* encompasses all persons who currently have incurred overdraft fees, regardless of whether or not overdraft fee was incurred as a result of the bank's debit re-sequencing."]

This Court first learned of the existence of *Thomas* on March 27, 2012, when BancorpSouth filed a notice that a proposed class action settlement had been preliminarily approved in *Thomas* by the Honorable Robert T. Dawson, United States District Judge, Western District of Arkansas, and requested that this Court stay all class-

related proceedings in *Swift* to allow the parties in *Thomas* to move forward with the final settlement approval process before Judge Dawson in Arkansas. (**DE # 2602**). Prior to March 27, 2012, BancorpSouth's counsel never made this Court, the PEC, or Plaintiff's counsel aware of any other overdraft-fee-related lawsuits filed or pending against BancorpSouth. (**DE # 2603-1**).

As a result of the motion practice that ensued, this Court has learned that on August 2, 2011 - nearly 18 months after *Swift* was filed - one of the named plaintiffs in *Thomas*, Billy D. Lawson, Jr., filed an action in Arkansas state court styled *Billy D. Lawson, Jr. v. Bancorpsouth, Inc., et al.*, Case No.: CV-11-4261 (21st Judicial District, Crawford County, Ark.) ("*Lawson*"), alleging claims nearly identical to those already pending in *Swift*. (**DE # 2605-1**). On September 9, 2011, *Lawson* was voluntarily dismissed without prejudice so that Plaintiff's counsel in *Lawson* and BancorpSouth could pursue confidential settlement negotiations. (**DE # 2603-1 & 2605-1**). Those confidential settlement negotiations continued for approximately six months, including two mediation sessions, culminating in the February 2012 class action settlement agreement that was submitted to Judge Dawson for preliminary approval in *Thomas*. (**DE # 2605-1**).

On February 28, 2012, the day before the settlement agreement was signed,[3] Plaintiff Melvin L. Thomas, III joined Plaintiff Lawson in filing *Thomas* in the Western District of Arkansas, asserting claims nearly identical to those in the *Swift* action. (**DE # 2605-4**). On March 12, 2012 – two weeks after it entered into the Settlement Agreement (**DE # 2605-10**) – BancorpSouth filed a motion to dismiss in *Thomas*. (**DE # 2605-5**). On March 16, 2012, the plaintiffs in *Thomas* filed an unopposed motion seeking certification of a settlement class, preliminary approval of the class action settlement, approval of a notice plan to provide absent class members with notice of the proposed class action settlement, and to schedule a final fairness hearing. (**DE # 2603-4**). On March 23, 2012, the *Thomas* plaintiffs filed a brief in support of their unopposed motion for class

---

[3] There is no date reflected anywhere on the Settlement Agreement between the *Thomas* parties, which BancorpSouth represented was signed on February 29, 2012, the day after the February 28, 2012 filing of *Thomas*. [DE # 2603-8].

certification. (**DE # 2603-5**). That brief confirmed that beginning in August 2011, before *Lawson* was voluntarily dismissed, the parties began discussions about negotiating a "global settlement." *Id.* at 4. Also on March 23, BancorpSouth filed a memorandum in *Thomas* in which it "urged the Court to preliminarily approve the settlement agreement" and, for the first time, disclosed the existence of *Swift* to the Arkansas federal court to "fulfill its obligation of candor." *See* Defendant BancorpSouth Bank's Bench Memorandum in Support of Settlement Agreement (**DE # 2603-6**), at 2. On March 26 – at the Thomas' parties' request – Judge Dawson convened a preliminary approval hearing in *Thomas*, which was attended by the same attorneys who represent BancorpSouth in *Swift* before this Court. *See* Transcript (**DE # 2626-1**), at 3.

While BancorpSouth claims that it fully disclosed the nature and procedural status of *Swift* to Judge Dawson, this Court's review of the record in *Thomas* and the March 26 hearing transcript leads it to a contrary conclusion. In this Court's view, BancorpSouth's counsel selectively disclosed the nature and status of the proceedings in *Swift* by failing to fully disclose to Judge Dawson the extent to which: (i) the claims in *Swift* are substantially similar to those asserted in the recently-filed *Thomas* case; (ii) the claims in *Swift* have been pending and actively litigated for over 18 months; (iii) the motion for class certification in *Swift* was fully briefed and pending decision at the time of the March 26 preliminary approval hearing in *Thomas*;[4] and (iv) this Court long ago entered a comprehensive scheduling order establishing pretrial deadlines in MDL 2036, including a June 22, 2012, deadline for completing discovery and a January 2013 trial date. Moreover, before and during the March 26 hearing in *Thomas*, BancorpSouth's counsel never disclosed to Judge Dawson that they: (a) had exchanged settlement-related information with Plaintiff's counsel in *Swift* while simultaneously pursuing secret settlement negotiations with the *Lawson/Thomas* parties; and (b) had not informed this Court, the PEC or Plaintiff's counsel in *Swift* of the existence of *Lawson* or *Thomas* or the proposed class action settlement.

[FN4--"Indeed, BancorpSouth objected to class certification in February 2012 - the same time it entered into the proposed settlement seeking class certification - without mention to this

Court, Judge Dawson, or the parties of the related action filed just weeks after their opposition to class certification."]

Judge Dawson naturally expressed concern about the *Thomas* parties' rush to obtain preliminary approval of a class action settlement in a case filed less than a month earlier:

> I am a little concerned with the speed with which we are moving. We do have a rocket docket and you can get a setting usually before you want a setting, but, you know, I'm willing to proceed as fast as you think we should proceed. But I would ask that today that we be as deliberate and as thoughtful as we can, because -- not to have a misstep because we are in -- we are apparently in a hurry.

Transcript (**DE # 2626-1**), at 4. BancorpSouth's counsel explained that their client's urgency in seeking preliminary approval was intended to satisfy three interested constituencies: (1) the proposed settlement class (BancorpSouth's customers) with whom the Bank had existing banking relationships; (2) bank regulators; and (3) the bank's shareholders. (**DE # 2626-1 at 15-17**). At no time, however, did BancorpSouth's counsel mention this Court's interest given its 18 month history presiding over *Swift* as part of MDL 2036.

Judge Dawson also asked the Bank's counsel about this Court's likely reaction to preliminary approval of the *Thomas* settlement. Judge Dawson was led to believe that this Court would have no issue with preliminary settlement approval of a later-filed overdraft fee lawsuit. Counsel suggested to Judge Dawson that this Court regularly enters stay orders when settlements are announced in MDL 2036, but neglected to disclose that such stays have been based on settlements announced *jointly* by the parties litigating in MDL 2036. (**DE # 2626-1 at 21-23**). In this Court's view, BancorpSouth's counsel was not candid with Judge Dawson in addressing his concerns that he might be infringing upon this Court's jurisdiction.

BancorpSouth's counsel downplayed to Judge Dawson the significance of the motion for class certification pending before this Court in *Swift*, suggesting that the absence of a certified class here left

the door open to Judge Dawson to certify a class for settlement purposes only in *Thomas* without regard for Swift. (**DE # 2626-1 at 14**). In this Court's view, Judge Dawson was not made fully aware that Plaintiffs motion for class certification, filed on December 20, 2011, was fully briefed and pending decision at any time.

BancorpSouth also advised Judge Dawson that *Thomas* would never be transferred to this Court as a tag-along action because the JPML had issued an Order suspending Panel Rule 7.1(a) on October 11, 2011. (**DE # 2626-1 at 22**). In fact, notwithstanding the October 11, 2011 Order, prior to March 26, the JPML had issued two conditional transfer orders relating to tag-along actions filed against other banks that are defending actions previously made part of MDL 2036. *See* Conditional Transfer Order (CTO-42) as to Bank of the West (**JPML DE # 646**) and Conditional Transfer Order (CTO-43) as to TD Bank (**JPML DE # 654**). Notably, on April 19, 2012, the day after the hearing before this Court and contrary to BancorpSouth's counsel's statement to Judge Dawson that *Thomas* would never be transferred, the JMPL issued Conditional Transfer Order (CTO-44) as to *Thomas*. (**JPML DE # 671**).

On March 26, 2012, based on the statements and answers provided by BancorpSouth's counsel and plaintiffs' counsel during the hearing, Judge Dawson entered an order granting preliminary approval to the proposed class action settlement in *Thomas*. (**DE # 2603-7**). Among other things, the preliminary approval order directed that notice be given to all *Thomas* settlement class members and scheduled a final approval hearing for July 30, 2012. On April 3 and 4, 2012, the parties in *Thomas* caused the notice of the proposed class action settlement to be mailed and emailed to approximately 350,000 and 67,000 settlement class members in *Thomas*, respectively, and published it in 16 newspapers. (**DE # 2634-1**). The *Thomas* parties disseminated class notice *after* the Motion to Enjoin was filed in *Swift* and after this Court entered an Order setting a hearing on the Motion to Enjoin for April 18, 2012.

[DE #2666 at 2-8.]

## II.   OTHER FACTUAL MATTERS THAT BANCORPSOUTH OMITS OR MISTATES

BancorpSouth's Statement of the Case and Statement of the Facts also omits or misstates several additional critical factual details.

First, concerning the Judicial Panel on Multidistrict Litigation's ("JPML") transfer rulings, the Fifth Third Bank case that the JPML declined to transfer was a case that was filed *before* the competing MDL case, and which had been settled *before* the MDL issued a decision regarding the transfer of that case. *See In re: Checking Account Overdraft Litig.,* 715 F.Supp. 2d 1358 (J.P.M.L. 2010). Similarly, Whitney Bank and Republic Bank & Trust Company d/b/a Republic Bank were *not* already defending actions that had been transferred to MDL No. 2036 at the time the JPML decided not to transfer the first-filed cases against those two banks. Finally, following entry of the Injunction, a settlement was announced in MDL No. 2036 involving TD Bank. As a result, TD Bank, which had been opposing transfer of a tag-along case styled *Hughes v. TD Bank*, withdrew its opposition to transfer, leading the JPML to immediately order transfer into MDL No. 2036.

Second, on March 29 – between March 27, 2012 (the date the bank first notified the district court of *Thomas*) and April 18, 2012 (the date of the hearing on BancorpSouth's motion for stay and Swift's emergency motion to enjoin *Thomas*), Swift immediately moved for emergency injunctive relief. Moreover, the district court issued an Order on April 2, 2012, scheduling the April 18, 2012 hearing.

[DE # 2666 at 14.] As the district court observed, BancorpSouth "could have easily asked Judge Dawson to modify the deadlines for disseminating notice to the settlement class until after th[e] [District Court here] ruled on the Motion to Enjoin and Motion to Stay." *Id.* Instead, it proceeded with settlement notice. *Id.* at 8, 14-15. Instead of seeking input and relief from Judge Dawson, BancorpSouth and the *Thomas* plaintiffs proceeded to allow the settlement notice administrator on April 3 and 4, 2012 to mail and email settlement notices to approximately 350,000 and 67,000 *Thomas* settlement class members, respectively, and publish notice in 16 newspapers. *Id.*

Third, in opposing the Injunction, BancorpSouth did not specifically address with the District Court its concern that it would be unable to participate in certain defined activities for which Judge Dawson's preliminary approval order set deadlines. *See* Brief at 8.[4] In point of fact, BancorpSouth's purported inability to comply with the *Thomas* Settlement Agreement due to the Injunction is not consistent with the terms of that agreement. With respect to confirmatory discovery, BancorpSouth agreed to a 45-day confirmatory discovery period that commenced the date the Settlement Agreement was signed, February 29, 2012. [DE # 2603-8 at 23 (Settlement Agreement ¶C.6)]. That 45-day period had already lapsed before the April 18, 2012 hearing during which the District Court orally

---

[4] References to the Appellant's Brief appear herein as "Brief at ___."

enjoined BancorpSouth and its counsel.

Similarly, BancorpSouth references an inability to furnish account statements to settlement class members at no cost, as contemplated by ¶C.11.d. of the Settlement Agreement. The agreement does not contemplate BancorpSouth furnishing account statements free of charge unless and until the settlement receives final approval. [DE # 2603-8 at 34-35]. The obligation relates to claim forms, which are not due until 45 days *after* final approval. *Id.* BancorpSouth's concerns about its inability to participate in the other cited activities contemplated by the Settlement Agreement[5] are due to its failure to ask Judge Dawson to slow down the timeline set forth in the preliminary approval order before the Injunction was entered.

Fourth, BancorpSouth sought and received relief from the Injunction to oppose JPML transfer [DE # 2653], but did not seek leave of court to ask that Judge Dawson modify and delay the deadlines in the preliminary approval order. BancorpSouth also opted not to request leave to allow it to ask Judge Dawson to notify accountholders of the Injunction.

Finally, in light of Judge Dawson's June 8, 2012 order vacating the preliminary class certification approval order in *Thomas* and transferring that case

---

[5] BancorpSouth refers to: (1) depositions of class settlement objectors; (2) participating in the final fairness hearing; and (3) filing declarations regarding compliance with the settlement notice plan. Brief at 8.

to the Southern District of Florida, the JPML issued an order on June 13, 2012 dissolving the Conditional Transfer Order for *Thomas*. *See* DE # 2770-4.

## STANDARD OF REVIEW

BancorpSouth's recitation of the standard of review of the entry of an injunction under the All Writs Act -- abuse of discretion -- accurately summarizes this Court's statement of the law in *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096-1097 (11th Cir. 2004). *See* Brief at 13. However, the Bank reaches to an unpublished decision from another circuit to suggest a less deferential standard of review of the district court's factual findings. That is not the law of this Circuit. "The facts found by a district court are clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1246 (11th Cir.2002) (internal quotation marks omitted).

The standard of review of the district court's application of the "first to file rule" is also abuse of discretion. *See Smith v. SEC*, 129 F.3d 356, 360 (6th Cir. 1997); *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 489 n.6 (8th Cir. 1990). BancorpSouth must prove that the District Court's findings of fact in support of the Injunction are clearly erroneous. *See U.S. v. Ala. Dept. of Mental Health and Mental Retardation*, 673 F.3d 1320, 1324 (11th Cir. 2012).

## SUMMARY OF THE ARGUMENT

In response to a clear and obvious threat to its appointed MDL jurisdiction, the District Court correctly exercised its discretion to enjoin a copycat class action lawsuit. BancorpSouth's failure promptly to disclose *Thomas* to the JPML, the District Court, Appellee and the MDL counsel was intentionally designed to allow for the hasty entry of a preliminary class settlement approval order in *Thomas*. The Injunction correctly allowed the JPML to decide whether the case should be included in MDL No. 2036 with *Swift*. The scope of the Injunction is a direct and proper response to a defiant MDL defendant's deliberate attempt to negotiate and seek approval of a class action settlement as quickly as possible outside the MDL without regard for its obligations to promptly disclose (a) *Thomas* and *Lawson* to the MDL court and opposing counsel pursuant to S.D. Fla. Local Rule 3.8 and (b) *Thomas* to the JPML pursuant to JPML Rule 7.1(a).

BancorpSouth's vigorous defense of checking account overdraft fee claims in the MDL for over 18 months, with a class certification decision in *Swift* imminent, elevates the importance of giving deference to the appointed MDL court to enjoin *Thomas* under both the All Writs Act, 28 U.S.C. § 1651, and "first to file" rule. But for BancorpSouth's concealment of *Thomas*, orderly consideration of whether to include *Thomas* in the MDL would have occurred. *Thomas* is a clear tag-along action under JPML rules. Thus, the JPML's decision as to whether

*Thomas* should be included in the MDL, despite the proposed *Thomas* settlement, should have preceded the preliminary approval hearing in that case.

Reversing the Injunction would only serve to encourage conduct that is antithetical to the fundamental rationale for appointing MDL courts to preside over class action cases involving common questions of fact. Therefore, this Court should reject BancorpSouth's argument that the district court abused its discretion because *Thomas* and *Swift* are not procedurally identical to other cases in which All Writs Act injunctions have properly been entered. A prior class certification order in *Swift* was not required to invoke the All Writs Act. As other courts have aptly observed, BancorpSouth's violation of rules requiring prompt disclosure to the district court and JPML of an action similar to *Swift* justified the Injunction. The District Court appropriately exercised its inherent power under the All Writs Act to restore order and integrity to the class overdraft fee litigation proceedings against BancorpSouth.

Independent of the All Writs Act, the District Court justifiably exercised its discretion under the "first to file" rule. *Swift* is indisputably the first-filed overdraft fee class action against BancorpSouth, making the MDL court the proper court to decide the merits of the overdraft fee claims or to preside over class settlement proceedings. As the objecting party, the Bank failed to meet its burden of proving compelling circumstances to warrant an exception to the "first to file" rule. Its

argument that *Thomas* had proceeded further than *Swift* is a fiction born of the same rule violations which support the Injunction under the All Writs Act. Knowing that disclosure of either case would draw immediate action from Swift and in turn the MDL Court, BancorpSouth defiantly orchestrated entry of the *Thomas* preliminary approval order of a conditionally-certified, settlement-only class that it intended to exclude Swift. Then, once disclosed, the Bank rushed to have class settlement notices published and distributed to class members, knowing the District Court had scheduled a hearing to promptly decide competing motions to stay *Swift* or enjoin *Thomas*. The District Court justifiably rejected the premise that *Thomas* was the more developed class action and concluded there was no reason to deviate from the "first to file" rule.

Given that the *Thomas* court has since ordered the transfer of *Thomas* and simultaneously vacated its preliminary approval of the *Thomas* settlement, and that BancorpSouth has canceled that settlement, it appears that this appeal has become moot. However, if this Court addresses the merits of this appeal, it should recognize that the policy favoring class settlements does not displace the importance of protecting the appointed MDL court's jurisdiction.

Finally, the District Court's use of a order drafted by Appellee's counsel – at the court's request – for the Injunction does not run afoul of any rule espoused by this Court. BancorpSouth disagrees with the factual findings in the Injunction, but

has failed to prove that any of those findings are clearly erroneous. Given the circumstances presented, this Court should affirm the Injunction, concluding the District Court acted well within its discretion to enjoin *Thomas*.

## ARGUMENT

### I.   INTRODUCTION

Litigants who commit deceptive acts in a copycat class action that are intended to deprive a district court vested with MDL jurisdiction over the first-filed class action should not be heard to complain when the district court promptly acts to protect that long-standing jurisdiction and the interests of those affected. The District Court properly exercised its discretion under the All Writs Act and the "first to file" rule when it enjoined BancorpSouth, its counsel, and anyone acting in concert with them from prosecuting the copycat action, *Thomas*, in a competing federal district court. The fact that *Thomas* is a tag-along action to an existing MDL proceeding should heighten this Court's concern with BancorpSouth's actions and prompt this Court to affirm the District Court's exercise of discretion to enjoin *Thomas*.

### II.   THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION TO ENJOIN *THOMAS* PURSUANT TO THE ALL WRITS ACT.

Despite its vigorous and active merits defense of overdraft fee claims in MDL No. 2036 (referred to hereafter as "MDL"), BancorpSouth attempted to seize

on an opportunity to moot the entirety of the *Swift* MDL class action by settling a copycat case in another federal court without informing the JPML, the District Court or Swift that another lawsuit had even been filed. BancorpSouth erroneously makes light of the District Court's jurisdiction as the appointed MDL Court as it pertains to the All Writs Act, 28 U.S.C. §1651(a), wrongfully suggesting that its jurisdiction was not threatened by the proposed *Thomas* settlement. For the reasons argued below, the District Court acted within its discretion to enjoin BancorpSouth's and its counsel's participation in *Thomas* as a means of protecting its jurisdiction vested by the JPML. The Injunction allowed the JPML the opportunity to decide whether to transfer *Thomas*, which should have occurred before BancorpSouth covertly secured preliminary approval of a class settlement.[6]

Particularly because the jurisdiction of an MDL court is involved, the fact that *Swift* had not yet been certified when the Injunction was entered is of no consequence. To conclude otherwise would only serve to devalue the purpose and importance behind the appointment of a single MDL court to preside over all federal pretrial proceedings (including settlement) involving an MDL defendant. To the extent that this Court has not previously entered an order directly addressing

---

[6] The JPML has since recognized the transfer of *Thomas* to the appointed MDL court. On June 13, 2012, the JPML issued an order vacating its Conditional Transfer Order of *Thomas* in recognition of the fact "that *Thomas* was transferred to the Southern District of Florida pursuant to 28 U.S.C. 1404, by the Honorable Robert T. Dawson in an order filed on June 8, 2012." DE # 2770-4.

the procedural circumstances presented in this appeal, affirming the District Court will appropriately condemn the actions taken by BancorpSouth and set an important precedent for future MDL litigation in this Circuit. Reversing the District Court would create a very damaging precedent and could eviscerate the jurisdiction of MDL courts presiding over class actions.

BancorpSouth is asking this Court to take an extremely narrow view of a district court's authority under the All Writs Act, one that this Court's jurisprudence does not support. In *Klay v. United Healthgroup*, Inc., 376 F.3d 1092, 1099-1100 (11th Cir. 2004), a case on which the Bank heavily relies, this Court noted that the All Writs Act "is a codification of the federal courts' ***traditional, inherent power to protect the jurisdiction*** they already have, derived from some other source" (emphasis added), allowing district courts to safeguard not only ongoing proceedings, but potential future proceedings, as well as already-issued orders and judgments. "A court may grant a writ under this act whenever it is 'calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it,' and not only when it is ''necessary' in the sense that the court could not otherwise physically discharge . . . its duties.'" *Id.* at 1100 (citation omitted).

The JPML entrusted the District Court to preside over all federal class action litigation involving BancorpSouth's checking account overdraft policies and

practices. Given the manner in which BancorpSouth secured preliminary class settlement approval in *Thomas*, this Court should not disturb the District Court's sound judgment that the existence and prosecution of *Thomas*, even for settlement purposes alone, outside of MDL No. 2036 interferes with the discharge of the District Court's MDL jurisdiction.

A. **Neither a Pending Settlement Nor a Class Certification Order in *Swift* was Required for the District Court to Invoke the All Writs Act.**

BancorpSouth is simply incorrect that a pending settlement agreement in the enjoining court or a certified class in *Swift* are prerequisites for applying the All Writs Act to enjoin *Thomas*. Indeed, several well-reasoned cases on which the district court relied support the contrary conclusion. *See In re Managed Care Litig.*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002); *In re Bank of America Wage and Hour Employ. Litig. ("BofA")*, 740 F. Supp. 2d 1207 (D. Kan. 2010); *In re America Online Spin-Off Accts. Litig.*, MDL No. 04-1581, 2005 WL 5747463 (C.D. Cal. May 9, 2005). The District Court correctly rejected the Bank's arguments that these cases should not be applied here or were wrongly decided. This Court should also reject other cases cited by BancorpSouth, which are factually distinct.[7]

---

[7] This Court's decision in *In re Ford Motor Co.*, 471 F.3d 1233 (11th Cir. 2006), is factually inapposite because the Georgia district court had already refused to certify a class, and the district court was acting to enjoin a state court action. Only

As shown in *Managed Care*, the All Writs Acts was designed to counter the situation presented here where the proposed release of claims in another judicial district would interfere with the MDL court's disposition of those same claims. The *Managed Care* MDL court properly invoked the All Writs Act to halt settlement activities outside of the MDL for a case that belonged in the MDL. The court enjoined collusive efforts to settle a copycat case and thereby deprive the MDL court of its ability to adjudicate long-standing claims against CIGNA. *Managed Care*, 236 F. Supp. 2d at 1343. Following entry of the All Writs Act injunction, the JPML transferred the enjoined action into the *Managed Care* MDL. *See In re Managed Care Litig.*, 246 F. Supp. 2d 1363 (J.P.M.L. 2003). The JPML

---

if the District Court here had denied class certification would it make sense to consider *Ford*. *Smith v. Bayer Corp.*, ___ U.S. ___, 131 S. Ct. 2368 (2011) shares similar factual distinctions. All Writs Act injunctions against state court actions involve a different analysis than those against copycat federal actions. *Retirement Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419 (2nd Cir. 2004), also is of no utility because the court reversed application of the Anti-Injunction Act where an MDL court enjoined a state court trial merely because the MDL court wanted to preserve its trial date.

*Faught v. Amer. Home Shield Corp.*, 660 F.3d 1289 (11th Cir. 2011), reversed an All Writs Act injunction because this Court held that the proper remedy to be pursued was a contempt order for violating an injunction against the prosecution of already released claims. That case has no application here. BancorpSouth completely misstates the holding in *In re Temple*, 851 F.2d 1269 (11th Cir. 1988), which actually involved this Court applying the All Writs Act to issue a writ of mandamus against a class certification order that included an injunction against all present and future litigation of asbestos personal injury lawsuits. The district court's order had the effect of stymieing individual state court lawsuits that were on the eve of trial.

has since approved of the same result in this case, subsequent to Judge Dawson's recent vacatur and transfer order.  [DE # 2770-4].

The *Managed Care* case and this case share remarkably similar procedural histories, save the fact that class certification had not occurred in *Swift* at the time the Injunction was entered.  CIGNA was simultaneously defending a case in the MDL and a narrower Illinois state court class action.  Like the *Thomas* plaintiffs, the *Managed Care* plaintiffs, working with CIGNA, revamped their complaint; CIGNA removed the action to federal court based on newly filed claims; and the parties immediately moved for preliminary class settlement approval.  *See Managed Care*, 236 F. Supp. 2d at 1339.

The court appropriately refused to condone the non-MDL settlement maneuvers of a defendant that was already party to the MDL.  *Id.* at 1342.  The court noted the critical importance of respecting the statute that established the JPML for the purpose of consolidating similar cases and promoting judicial efficiency, 28 U.S.C. §1407, as well as the importance of subjecting class settlements to rigorous review because of their far-reaching impact on numerous parties.  *Id.*  Enjoining CIGNA, the court emphasized the need to respect the JPML, which had vested it with authority over the centralized actions, and the fact that the injunction would further the JPML's directive.  *Id.* at 1343.  Allowing the

settlement to proceed would directly undermine the JPML. *Id.* The same concerns exist here and support the Injunction.

In *BofA*, an MDL court enjoined subsequently filed proceedings in another federal district court in which a class settlement had been preliminarily approved. Like the situation here, there were overlapping claims and the proposed settlement would likely extinguish claims in the MDL court. 740 F. Supp. 2d at 1209. The MDL court was critical of Bank of America's failure to disclose the non-MDL case, concluding that the integrity of the judicial process in the MDL court would be undermined and that the bank had disregarded direct court orders. *Id.* Initially, like *Lawson* here, the non-MDL case against BancorpSouth was not removable to federal court.[8] *Id.* at 1210. However, the complaint was amended in a fashion that allowed for and prompted removal by the bank. *Id.* Although *Lawson* was not removable, *Thomas* is admittedly the product of the parties' concealed agreement to dismiss *Lawson* to facilitate covert settlement negotiations, following which a national class action intending to subsume *Swift* would be filed.

---

[8] The record in this case reflects that the *Thomas* plaintiffs' counsel initially filed *Lawson* in Arkansas state court, attaching Stipulations on Limitation of Damages in which Lawson and his counsel stipulated to limiting the relief sought, inclusive of attorney's fees and costs, to avoid CAFA jurisdiction. [DE # 2605-25 at 21-25]. The *Thomas* plaintiffs' counsel was recently criticized by an Arkansas federal court presiding over another class action for this conduct. The court indicated that such actions create a question as to the adequacy of the class representative and class counsel. *See Murphy v. Reebok Int'l, Ltd.*, Case No. 4:11-cv-214-DPM, 2011 WL 1559234, at *3 (E.D. Ark. Apr. 22, 2011).

10849-008/00160442_1

Distinguishing cases, including some of the same ones BancorpSouth relies on (discussed below), the *BofA* MDL court found it significant that "that none of those cases concerned a defendant attempting to settle a tag-along action outside the context of an MDL after ***deliberately or inadvertently*** failing to disclose the case to the JPML or the MDL court." 740 F. Supp. 2d at 1215. It did not matter that there was no pending settlement or a class certification order in the MDL action. *Id*. at 1214-15. The court analogized to *Managed Care*, finding that order very persuasive.[9] *Id*. at 1216.

The *BofA* court was correct to ignore the lack of a class certification order in the MDL action when applying the All Writs Act. This Court should concur for the simple reason that a clear precedent for MDL litigation should exist to discourage defendants from intentionally trying to secretly settle a copycat action being prosecuted by unscrupulous plaintiffs' attorneys who are aware that the very same claims are already being pursued by experienced and well-qualified counsel. Reversing the Injunction would only serve to encourage the clearly unscrupulous activity at the hands of the *Thomas* parties.

BancorpSouth deems it relevant to argue that the District Court had only

---

[9] The panel of this Court that decided *Alabama v. U.S. Army Corp. of Eng'rs* favorably cited *Managed Care* as a case that applied the All Writs Act to "unique considerations that support[ed] enjoining proceedings related to a complex class action." 424 F.3d 1117, 1132 n.22 (11th Cir. 2005). *Alabama* stands in the face of BancorpSouth's suggestion that *Managed Care* is "questionably reasoned." *See* Brief at 28.

asserted jurisdiction over Swift's individual claims at the moment the Injunction was entered, a class having not yet been certified.[10]  *See* Brief at 25.  Perhaps if BancorpSouth were not defending an action in the MDL this would be relevant. However, this is not the case.  Instead, BancorpSouth had duties to the JPML and the District Court to promptly disclose *Thomas* when it was filed, and to the District Court to promptly disclose *Lawson*.  A defendant that secures a conditionally certified class for settlement purposes only under these circumstances should not be credited with an advantage that prevents application of the All Writs Act, especially when the class certification motion is fully briefed.

The *BofA* court distinguished *Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091 (9th Cir. 2008), and *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322 (3d Cir. 2007), two cases on which BancorpSouth relies.  The distinctions noted in *BofA* equally apply here and demonstrate why the district court lawfully exercised its sound judgment to enjoin *Thomas* under the All Writs Act.

*Grider* involved a federal action that was at an advanced stage prior to the creation of an MDL.  As a result, the JPML did not transfer that action into the MDL.  Later, when the MDL proceeding moved toward a comprehensive

---

[10] Given BancorpSouth's decision to exercise its right to cancel the proposed *Thomas* settlement pursuant to the terms of the settlement agreement, after Judge Dawson's vacatur and transfer order, the only certified class exists in *Swift*.  This development undercuts the entire premise of Section II.B.1. of BancorpSouth's Brief.

settlement, the non-MDL court issued an All Writs Act injunction against the defendants in the MDL court. *Grider*, 500 F.3d at 326-327. Though there was no settlement in the MDL action, the Third Circuit in *Grider* properly placed greater focus on the facts that (a) the enjoined court was the MDL court; (b) there was no evidence of wrongdoing by the defendants; and (c) the class members had an adequate remedy at law to object through the Fed. R. Civ. P. 23(e) process. *Grider*, 500 F.3d at 331-332. Here, in contrast, the MDL court enjoined the non-MDL court to protect the MDL court's path to judgment and the important responsibilities vested in it by the JPML. Further, BancorpSouth violated S.D. Fla. Local Rule 3.8 and failed to tag *Thomas* with the JPML. Finally, since the class definition approved by Judge Dawson excluded Swift from the class as an accountholder that "is the subject of an active lawsuit against BancorpSouth" [DE # 2603-7 at 2], Swift's standing to object to the *Thomas* settlement was uncertain. At the same time, the District Court correctly expressed concern about its continued jurisdiction over Swift's individual claims under the Class Action Fairness Act ("CAFA") if *Thomas* were permitted to proceed to settlement. [D.E. # 2666 at 13 n.5]. As is typical of consumer class actions, Swift's claims would not satisfy the $75,000 amount in controversy requirement under 28 U.S.C. §1332(a).

The *BofA* court also observed that *Negrete* was not an MDL proceeding.

740 F. Supp. 2d at 1103. There was no evidence of collusion, as there is here.[11] *Negrete*, 523 F.3d at 1099. Ultimately, the lack of a settlement in *Swift* does not trump the other more important procedural factors that properly led the *BofA* court, and the District Court here, to enter All Writs Act injunctions, following *Managed Care*. Again, it was pivotal for the *BofA* court that neither *Negrete* nor *Grider* involved "a defendant attempting to settle a tag-along action outside the context of an MDL after deliberately or inadvertently failing to disclose the case to the JPML or the MDL court." 740 F. Supp. 2d at 1215. Of course, this is precisely what BancorpSouth did here and why the District Court rightfully entered the Injunction.

*America Online* also supports the Injunction. There, the court enjoined efforts to have a state court class settlement approved where the MDL defendant, America Online ("AOL"), secretly negotiated a state court settlement after it was unsuccessful in negotiating a settlement of claims being litigated against it in a pre-existing MDL proceeding. *America Online*, 2005 WL 5747463 at *2. Many of the points that BancorpSouth raises about the procedural status of *Swift* were raised by AOL and rejected by the court. The court enjoined the Illinois state court

---

[11] BancorpSouth argues that it did not collude to enter into a settlement outside of the MDL, but cannot point to evidence to prove that the District Court's factual findings to the contrary are clearly erroneous. *See Ala. Dept. of Mental Health and Mental Retardation*, 673 F.3d at 1324 (appellant's burden to establish that findings of fact are clearly erroneous).

proceeding because the settlement in that forum "diminishes this Court's ability to bring the MDL litigation to a natural conclusion." *Id*. at *4. Similar to the situation here, there were concerns about reverse auction activity and gamesmanship by AOL. *Id*. at *5. Like BancorpSouth, AOL also failed to comply with a local court rule requiring disclosure of a similar action being filed. *Id*.

This Court should reject, as insignificant, BancorpSouth's observation that *America Online* was a single defendant MDL, compared to MDL No. 2036, organized to coordinate pretrial proceedings against numerous banks. *See* Brief at 30. If BancorpSouth had its way, class overdraft fee litigation against it would cease with final approval of the proposed *Thomas* settlement. Therefore, there is no relevance to the District Court retaining jurisdiction over cases against other banks in the MDL. Again, the District Court's jurisdiction over Swift's class claims **against BancorpSouth** was clearly threatened by *Thomas*. Further, the District Court correctly observed that its jurisdiction over Swift's individual claims is doubtful under CAFA. [DE # 2666 at 13 n.5]. Additionally, the Bank ignores the fact that, when the JPML establishes an MDL for coordinated or consolidated pretrial proceedings, such proceedings include settlement matters. *See Managed Care*, 246 F. Supp. 2d at 1365 ("settlement matters are appropriate pretrial

proceedings subject to centralization under §1407").[12]  The District Court should

be presiding over *Thomas*, an obvious tag-along action.  Judge Dawson and the

JPML have since agreed with this conclusion.

Accordingly, the District Court correctly followed the *Managed Care*, *BofA*,

and *America Online* courts, and distinguished cases cited by BancorpSouth, in

applying the All Writs Act to enjoin BancorpSouth to protect the integrity of the

MDL process.[13]

**B.**      **Violations of S.D. Fla. Local Rule 3.8 and BancorpSouth's Failure to Tag *Thomas* with the JPML Support the Injunction.**

Contrary to BancorpSouth's argument, the District Court's Pretrial Order

No. 1 did not render Rule 3.8 inapplicable to MDL No. 2036.  Also, BancorpSouth

---

[12] The cited JPML order is the one in which the JPML determined it would deny CIGNA's opposition to MDL transfer of the *Kaiser v. Cigna* action that was the subject of the All Writs Act injunction in the *Managed Care* MDL.

[13] BancorpSouth's citation to the District of Kansas case of *Vallier v. Am. Fid. Assur. Co.*, No 08-2267, 2008 U.S. Dist. Lexis 70672 (D. Kan. Sept. 16, 2008), is also unavailing.  *BofA* and *Vallier* are from the same court, but *Vallier* pre-dates *BofA*.  Brief at 19.  *Vallier* involved an All Writs Act injunction against a state court proceeding, potentially implicating the Anti-Injunction Act that is not involved here.  Unlike in *Vallier*, *Thomas* interferes with the District Court's path to judgment because the intention is to exclude *Swift* from the class and at the same time undermine the District Court's order certifying the class with him as its representative.  Again, Appellee is unlikely to have standing to object under Fed. R. Civ. P. 23(e) due to the *Thomas* class definition.  *Vallier* was at its very preliminary stages, which is not the case here.  *In re Gen. Motors Corp. Pick-Up Fuel Tank Prod. Liab. Litigation*, 134 F.3d 133 (3rd Cir. 1998), also does not support BancorpSouth, as it too involved a settlement in a state court action, potentially implicating the Anti-Injunction Act, and did not involve covert conduct like that exhibited here by BancorpSouth.

is being disingenuous with this Court in suggesting in footnote 28 of its brief that its disclosure of *Thomas* after the preliminary approval order was entered was sufficiently prompt to comply with Rule 3.8.[14] BancorpSouth chose not to tell the JPML, the District Court, or Appellee about *Thomas*, planning to argue that the MDL court was powerless to act on the class action claims in *Swift* once the certification of a settlement class in *Thomas* occurred. In fact, the Bank unsuccessfully requested that *Swift* be stayed. [DE # 2666 at 9-10]. BancorpSouth's actions thwarted prompt action to tag *Thomas* with the JPML and efforts to intervene and object in *Thomas* prior to the preliminary approval hearing. [DE # 2666 at 14]. The district court correctly intervened with the Injunction to prevent further actions.

In an effort to distinguish itself from other litigants who ran afoul of similar local court rules and who properly were subjected to All Writs Act injunctions (*see Managed Care*, *BofA*, and *America Online*), BancorpSouth drew an after-the-fact inference about Rule 3.8 (after Swift raised it with the District Court) that is not supported by the language in Pretrial Order No. 1. Nowhere in that order did the District Court recite that Rule 3.8 would be inapplicable in MDL No. 2036.

---

[14] Rule 3.8 reads: "It shall be the continuing duty of the attorneys of record in every action or proceeding to bring ***promptly*** to the attention of the Court and opposing counsel the existence of other actions or proceedings . . . ***as well as the existence of any similar actions or proceedings then pending before another court*** or administrative agency" (emphasis added).

Properly construed, the portion of the order BancporpSouth quotes (Brief at 47) was for the purposes of assisting the District Court in managing the consolidation and coordination of later-filed other overdraft fee cases "hereinafter filed in this Court or transferred from another Court." [DE # 60 at 2]. This quoted language applied to cases actually filed in the district court and those that were the subject of a formal transfer order without eliminating the applicability of Rule 3.8. BancorpSouth's whole concept that it should not be required to notify Swift, the JPML, or the District Court of a copycat case is offensive to the policies and purposes behind MDL litigation.

BancorpSouth cannot dispute that if Rule 3.8 remained applicable despite Pretrial Order No. 1, that rule was violated twice, first as to *Lawson* and second as to *Thomas*. Swift did not argue, and the District Court did not conclude, that the violation of Rule 3.8 *alone* justified the issuance of the Injunction. Yet the violation of that rule was properly a factor considered in entering the Injunction because significant events were transpiring outside the MDL prior to the JPML considering whether to transfer *Thomas*. The facts that (1) the District Court was appointed by the JPML to preside over federal overdraft fee cases; (2) a fully briefed class certification motion was ripe for decision; and (3) *Thomas* is an obvious tag-along action against a bank already defending in the MDL, properly lead the District Court to enjoin a threat against its jurisdiction and a smooth path

to judgment in *Swift*.

Further, BancorpSouth's discussion (Brief at 22) of the mechanics by which the JPML transfers a tag-along action to an existing MDL proceeding, pursuant to 28 U.S.C. §1407, does not support its appeal. The District Court correctly observed that BancorpSouth's failure to timely disclose *Thomas* thwarted the timely "tagging" of *Thomas* with the JPML for consideration as a tag-along action. [DE # 2666 at 14]. The District Court did not enjoin *Thomas* merely because it is the appointed MDL court. As in *BofA*, the District Court reacted to the fact that the JPML had not yet had an opportunity to decide whether to transfer *Thomas*. The Injunction allowed the JPML to address that issue.

In a related vein, elsewhere in its Brief, BancorpSouth makes the astonishing and inconsistent argument that the All Writs Act injunction should not have been entered because the JPML transfer process is available to Swift. Brief at 35-36. BancorpSouth's deceitful concealment of *Thomas* until it secured preliminary class settlement approval eliminated Swift's ability to have the JPML timely decide upon transfer. As in *BofA*, the Injunction here properly had the effect of slowing down the process to allow the JPML to address the issue of transfer. The Injunction does not infringe the Bank's due process rights. In fact, at the Bank's request, the District Court gave BancorpSouth the opportunity to oppose MDL transfer of *Thomas* with the JPML. [DE # 2653]. No other relief should be

afforded, as none is necessary or justified.[15]  BancorpSouth acted to convince the

JPML not to transfer *Thomas*.  The JPML has since recognized the transfer of

*Thomas* by Judge Dawson, likely rendering this appeal moot.[16]

Irrespective of the Rule 3.8 violation, BancorpSouth again erroneously

defends its failure to notify the JPML of *Thomas* on the October 11, 2011 Order

suspending JPML Rule 7.1.  *See* Brief at 48 n.29.  The District Court reasonably

---

[15] For this reason, the Court should reject the BancorpSouth's argument that the Injunction is overbroad, especially since the Bank does not offer its agreement to a narrowed Injunction that objectively protects all interested parties.  *See* Brief at 38-41.  The Injunction is not overbroad by virtue of the District Court barring "participation" in *Thomas* as opposed to "prosecution" of *Thomas*.  *See* Brief at 39 n.25.  Since BancorpSouth is the defendant, it would not be prosecuting *Thomas*.  Plaintiffs prosecute and defendants defend.  The semantics are of no consequence.

The Injunction properly prevented BancorpSouth from completing the *Thomas* settlement prior to the JPML ruling on transfer.  The *BofA* court acted similarly, and in that case properly enjoined the tag-along action before notice to the settlement class could occur.  740 F. Supp. 2d at 1217.  Here, BancorpSouth rushed out settlement notices to the *Thomas* class despite the fact that (a) Swift's counsel immediately tagged *Thomas* and moved for emergency injunctive relief, and (b) the District Court promptly noticed a hearing before the notices were sent out and published. [DE # 2666 at 14].  BancorpSouth also did not wait to see if the District Court would stay *Swift*.

[16] Before the Injunction was entered, or when it sought relief to oppose JPML transfer thereafter, the Bank should also have sought limited permission to appear in Arkansas to request a stay of the *Thomas* preliminary approval order pending the JMPL's transfer decision.  BancorpSouth's failure to request such relief should be deemed a waiver of it argument about the breadth of the Injunction.  Additionally, the Bank's failure to request this additional relief from the District Court, even after Swift suggested that path in his opposition to BancorpSouth's Time-Sensitive Motion for Stay Pending Appeal filed in this Court, is further evidence of the Bank's self-interest and disregard for its accountholders.

interpreted this Order as only applying to instances in which a new bank defendant had been sued, which is consistent with how the JMPL has interpreted the order. [DE # 2666 at 9-10, 14]. At the time of the April 18, 2012 hearing, the JPML had entered two post-October 11, 2011 conditional transfer orders as to tag-along actions filed against banks already defending in the MDL, of which BancorpSouth had notice: (1) February 8, 2012, twenty (20) days <u>before</u> *Thomas* was filed, the JPML issued an order involving Bank of the West, and (2) March 16, 2012, the same day the *Thomas* plaintiffs moved for preliminary class settlement approval and ten (10) days before the preliminary approval hearing, the JPML issued an order involving TD Bank. [JPML DE # 647, 654]. In light of this precedent, it is clear that BancorpSouth's gamesmanship and desire to resolve Swift's class claims cheaply outside of the MDL led the Bank not to tag *Thomas* or give Swift's counsel the timely opportunity to do so.

### C. <u>All Writs Act Injunctions Do Not Require Consideration of the Factors Applicable to Traditional Injunctions.</u>

In light of this Court's All Writs Act jurisprudence, chiefly *Klay*, BancorpSouth is simply wrong to argue that Federal Rule of Civil Procedure 65 applies. In *Klay*, this Court explicitly addressed *Florida Med. Ass'n v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199 (5th Cir. 1979), the case that BancorpSouth claims requires application of the four traditional factors for a preliminary injunction under Rule 65. This Court should follow *Klay* and its later

decision in *Alabama v. U.S. Army Corp. of Eng'rs*, 424 F.3d 1117 (11th Cir. 2005).

In *Klay*, this Court analyzed three different types of district court injunctions: (a) traditional injunctions, (b) statutory injunctions, and (c) All Writs Act injunctions. 376 F.3d at 1098-1101. This Court confirmed that only the first two require application of the four factors triggered by a Rule 65 motion. *Id.* at 1097-1099. "The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns." *Id.* at 1100; *see also id.* at 1101 n.13 (specifically addressing *Florida Med. Ass'n*); *Managed Care*, 236 F. Supp. 2d at 1343 ("Because the type of injunction here does not fall within the scope of the typical Rule 65 injunction, Plaintiffs do not have to meet the Rule 65 requirements."); *BofA*, 740 F. Supp. 2d at 1217-1218 (noting case authority, including *Managed Care*, finding no need to meet the Rule 65 requirements); *In re Baldwin-United Corp.*, 770 F.2d 328, 338-39 (2d Cir. 1985) (Rule 65 does not apply to injunctions issued under the All Writs Act).[17]

A year after *Klay*, this Court recognized its ruling in *Klay* on this issue. *See*

---

[17] *U.S. v. Brown*, 342 F.3d 1245 (11th Cir. 2003), cited by the Bank, has no application here because this Court reconciled its holding with *Florida Med. Ass'n* in *Klay*.

*Alabama*, 424 F.3d at 1131-1132 (quoting *Klay*, 376 F. 3d at 1100).[18] After *Klay*

and *Alabama*, it is clear that only the adequate-remedy-at-law element applicable

to traditional injunctions applies to All Writs Act injunctions. 424 F.3d at 1132. In

*Alabama*, this Court cited, as an adequate remedy at law, a litigant's opportunity to

raise its claims in the concurrent federal proceeding sought to be enjoined. 424

F.3d at 1132. However, the *Thomas* settlement class definition excluded Swift. So

he very likely would not have had standing to object so as to enforce rights

pursuant to Fed. R. Civ. P. 23(e), which would have left him without an adequate

remedy at law. It is also noteworthy that this Court cited *Managed Care* favorably

in *Alabama* as an example of a case that applied the All Writs Act to "unique

considerations that support enjoining proceedings related to a complex class

action." 424 F.3d at 1132 n.22.

In *BofA*, the court found that irreparable harm would ensue if settlement

notice were to issue to the class pending the JPML's transfer decision. That court

noted potential confusion about the competing class actions; deterrence from

participation in the MDL; and that the settlement in the non-MDL case would

---

[18] The panel which decided *Alabama* suggested that the *Klay* court's statement about the inapplicability of Rule 65 could be viewed as dictum because the *Klay* court struck down the injunction. *Alabama*, 424 F.3d at 1131 n.20. It also indicated that there was some inconsistency in Eleventh Circuit jurisprudence on this issue, as discussed in *Klay*. *Id.* However, considering that *Alabama* did not involve an All Writs Act injunction or a class action, this Court should not be deterred in relying on *Klay* to affirm. The panel's lengthy discussion about the separate concerns associated with an All Writs Act injunction is well-reasoned.

establish a lower baseline for future settlement discussions in the MDL action. 740

F. Supp. 2d at 1218. The court also weighed the public interest factor, concluding

that the public's interest weighed in favor of enjoining the non-MDL settlement

pending a JPML decision on transfer. *Id.* at 1219. In addition to those concerns,

the District Court was correctly concerned about its continued subject matter

jurisdiction over Swift's individual claims under CAFA. [DE # 2666 at 13 n.5].

If the four injunction factors (excluding likelihood of success on the merits)

did apply here, the District Court noted that its findings of fact supported the

conclusions that irreparable harm would occur if an injunction did not issue against

*Thomas*; the threatened injury to *Swift* outweighs whatever damage the Injunction

would cause to BancorpSouth; and the Injunction would not be adverse to the

public interest.[19]  [DE # 2666 at 15]. This Court should affirm. Alternatively, if

---

[19] In a footnote, BancorpSouth says it was error for the district court not to condition the Injunction on posting a bond pursuant to Fed R. Civ. P. 65(c). Brief at 33 n.21. Given that *Klay* holds that Rule 65 does not apply to All Writs Act injunctions, no bond was required. In *Scardelletti v. Debarr*, 265 F.3d 195, 211 (4th Cir. 2001), *rev'd on other grounds*, 536 U.S. 1 (2002), the Fourth Circuit noted that "the structure and plain text of Rule 65 make clear" that a bond is not required for an All Writs Act injunction. *Id.* That court reasoned that the Rule 65(c) bond requirement only applies to preliminary injunctions and confirmed that an All Writs Act injunction is not a preliminary injunction. *Id.* It further noted: "[I]f the district court were required to comply with Rule 65(c)'s bond requirement as a prerequisite to an All Writs Act injunction, its ability to protect its own jurisdiction would be tied to a party's ability to post a bond. As a result, the district court would be rendered powerless to protect its own jurisdiction where the party is unable to post a bond." *Id.* That reasoning is sound and applicable here.

the Court believes that the District Court should state more expressly its analysis of the traditional injunction factors, remand for that purpose would be appropriate.

## III. THE "FIRST TO FILE RULE" PROVIDED AN INDEPENDENT BASIS FOR THE DISTRICT COURT TO ENJOIN *THOMAS*.

Independent of its application of the All Writs Act to enjoin *Thomas*, the District Court properly exercised its discretion to invoke the "first to file rule" in the Injunction. In fact, if this Court has any concerns with the District Court's invocation of the All Writs Act, the Injunction should be affirmed because the District Court did not abuse its discretion in utilizing the "first to file rule" as an alternative basis for the Injunction. *See Smith*, 129 F.3d at 360; *U.S. Fire Ins. Co.*, 920 F.2d at 489 n.6. BancorpSouth misconstrues the portion of the Injunction discussing the "first to file rule" as being a ground for which the District Court invoked the All Writs Act. That is neither true nor necessary. The District Court could have based its Injunction solely on the "first to file rule," which is arguably the most direct basis for enjoining *Thomas.* It implicates none of the concerns that BancorpSouth expresses about the District Court's application of the All Writs Act.

---

Anticipating BancorpSouth's reply brief, Swift is aware that the *Scardelletti* court indicated that other parts of Rule 65 apply to All Writs Act injunctions, but careful study of that decision reveals that the court did not conclude that the four factors for a traditional preliminary injunction needed to be addressed. *Id.* at 211-212. Instead, the court's focus was on Rule 65(d)'s requirements of specifying the reasoning for, terms of, and activities restrained in the injunction, as well as the persons bound. The Injunction here satisfies Rule 65(d), if it applies.

It is undisputed that *Swift* is the first-filed overdraft fee class action against BancorpSouth. The "first to file rule" developed as a doctrine of federal comity. Competing lawsuits involving the same parties and the same issues in separate jurisdictions waste judicial resources and can lead to conflicting results. *See Thomas Betts Corp. v. Hayes*, 222 F. Supp. 2d 994, 996 (W.D. Tenn. 2002) ("The first filed rule is a doctrine of federal comity that promotes judicial efficiency"). Under the "first-to-file rule," the entire action should generally be decided by the court in which the action was first filed, here the District Court. *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997). Despite the fact that it was vigorously and actively defending a well-developed class action in the MDL, BancorpSouth enlisted the *Thomas* plaintiffs' assistance to orchestrate the filing of a second federal class action addressing the Bank's overdraft fee policies and practices. The clear intention was to cheaply avoid completing the *Swift* action in the MDL.

BancorpSouth does not dispute that this Circuit follows the "first-to-file rule," and the Bank fails to offer any compelling circumstances to deviate from it here. In *Manuel v. Eonvergys Corp.*, 430 F.3d 1132, 1135-36 (11th Cir. 2005), this Court held: "[W]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed under the first-filed rule." "[T]he party objecting to jurisdiction in the first-filed forum [must] carry the burden of

proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Id.* at 1135. "In [the] absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982). As the District Court concluded, its "designated role in supervising all of these [federal overdraft] actions heightens the importance of enforcing the 'first-to-file rule' where, as here, a copycat case has been filed against a bank that is already defending a case centralized within MDL 2036." [DE # 2666 at 16].

In fact, in the Injunction, the District Court properly reached the following conclusions about BancorpSouth's nefarious conduct:

> Given that the *Lawson/Thomas* parties converted their case from a state class action to a putative national class action in another federal court – and that they explicitly intended to subsume *Swift* and settle outside of the MDL – the "first-to-file rule" strongly supports an injunction staying *Thomas*. It is particularly appropriate for this Court to intervene to stay *Thomas* on account of the conduct of the *Thomas* parties."

> This Court concludes that it should not sit idly by and allow *Thomas* to proceed. Allowing *Thomas* to move forward will create a dangerous precedent. It would effectively encourage other defendants in MDL 2036 to follow the *Thomas* parties' lead, by cooperating with counsel who file substantially similar cases outside of MDL 2036 against banks already defending cases in MDL 2036, with the intent of settling those cases outside of MDL 2036 and thereby undermining the ongoing litigation against such bank(s) in MDL 2036. In the Court's view, the actions of the *Thomas* parties, in particular BancorpSouth which has long been subject to this Court's jurisdiction, exhibit a direct attempt to undermine this Court's authority granted by the JPML. Thus, an injunction shall issue under the "first to file" rule.

[DE # 2666 at 16-17]. Judge Dawson evidently agreed, vacating his preliminary approval of the class settlement in *Thomas* and transferring the case to the MDL court after learning of Judge King's Injunction.

BancorpSouth incorrectly argues that a district court cannot use the "first to file rule" as a basis for *enjoining* a second-filed action. *See* Brief at 41-42. The District Court had the option to stay *Thomas*. However, given the procedural histories of *Swift* and *Thomas*, competing class actions, the Injunction was the most effective remedy and is supported by law. *See Smith*, 129 F.3d at 361 ("When a federal court is presented with such a duplicative suit, it may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit. *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-184, 72 S. Ct. 219, 221-22, 96 L.Ed. 200 (1952)."). *See also Hintergerger v. Catholic Health Sys.*, No. 08-CV-9488, 2012 WL 125152 (W.D.N.Y. Jan. 17, 2012) (noting options to stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions); *CollegeSource, Inc. v. AcademyOne, Inc.*, Civ. No. 10-3542, 2011 WL 5127813, at *5 (E.D. Pa. Oct. 31, 2011) (noting no precedent to have the second-filed court enjoin the first-filed court, but the opposite to be the

rule).[20]  If this Court determines that a stay would be the preferred remedy, the Court should remand to the District Court for such a ruling.

By suggesting that *Thomas* should be treated as the first-filed action with respect to the unnamed class members, *see* Brief at 42 n.26, BancorpSouth again ignores the significance that it is defending *Swift* in the MDL, as well as its clear violations of court rules which enabled it to certify *Thomas* first.  In 2009, the JPML centralized present and future overdraft fee cases filed throughout the United States.  Over BancorpSouth's objection, *Swift* was transferred to the MDL on October 18, 2010.  [DE # 847].  After 18 months of litigation, and just before class certification briefing closed (with the District Court having already certified classes against other banks), BancorpSouth forum shopped and secretly obtained preliminary approval of a class settlement that it hoped would subsume *Swift*.

---

[20] The Bank cites *CollegeSource* as an example of a case in which the second-filed action was more developed.  *See* Brief at 42.  However, a review of that decision reveals that the district court's decision was based, in large part, on the untimeliness of the motion.  *CollegeSource*, 2011 WL 5127813 at *4-5.  Swift could not have acted more timely, having sought emergency relief within two days of being notified of *Thomas*.  Similarly, the factual background of the following cases cited by the Bank are not analogous and thus do not support reversal here: *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119 (8th Cir. 1985) (the same claims were being litigated simultaneously in two federal courts for two years); *Merswin v. Williams Cos., Inc.*, Civ. No. 1:08-CV-2177-TWT, 2009 WL 249340 (N.D. Ga. Jan. 30, 2009) (the first-filed action was no longer pending); *Jones v. Jeld-Wen, Inc.*, No. 07-22328-CIV, 2008 WL 2699434 (S.D. Fla. June 30, 2008); *Church of Scientology of Calif. v. U.S. Dept. of Army*, 611 F.2d 738 (9th Cir. 1979).

The Bank raced for preliminary approval, which a hesitant Judge Dawson granted, despite his express concern for the District Court's jurisdiction over *Swift*. [DE # 2626-1 at 21-23]. Judge Dawson was no doubt misled by BancorpSouth's highly misleading representation that *Thomas* would never be transferred to the MDL. Ten days earlier the JPML had conditionally transferred a tag-along action against another bank defending in the MDL. Clearly, the Bank feared that *Thomas* would be tagged and conditionally transferred too. Given these facts, this Court should give no weight to the conditional certification of a *settlement only* class in *Thomas*, which occurred on the eve of the class certification decision in *Swift*, and has since been vacated by the issuing judge. The preliminary approval order certifying the *Thomas* class does not contain any analysis of the Fed. R. Civ. P. 23(a) and (b) factors. [DE # 2603-7 at 3-4]. In contrast, the *Swift* class certification order reflects the District Court's rigorous analysis of all of those factors, and notice to that class is forthcoming. [DE # 2673]. Given the policies that underlie the "first to file rule," the District Court aptly and reasonably exercised its discretion to apply that rule to *Thomas*.

BancorpSouth unfairly criticizes Swift's counsel, claiming that the sole motive for challenging the Bank's actions in *Lawson* and *Thomas* is attorney's fees. *See* Brief at 43-44. In light of BancorpSouth's machinations, this argument does not deserve to be dignified with a response. The Bank is also completely

wrong to suggest that the amount of work to date in the first-filed action is irrelevant. *Id.* The opposite is true because it demonstrates that *Swift* was well-developed before *Thomas* was filed, which is the central issue under the "first to file rule." There can be no dispute that the District Court had undertaken significant efforts in the 18 months prior to the date *Thomas* was filed. Through discovery and motion practice, Swift's counsel developed a strong case for class certification, which was about to be granted. Ultimately, it is a sham to suggest that the "first to file rule" favors *Thomas* over *Swift*. Everything that BancorpSouth did to maneuver a class settlement in *Thomas* is antithetical to the policies underlying the "first to file rule," including its violations of the JPML tag-along rule and Local Rule 3.8.

This Court should also reject BancorpSouth's effort to distinguish the breadth of the claims asserted in *Swift* and *Thomas*. *See* Brief at 44-46. The issues only need overlap, not be identical. *Cadle v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999); *Mann Mfg. v. Hortex, Inc.,* 439 F.2d 403, 408 (5th Cir. 1971). Differences in plaintiff class representatives do not bar application of the "first to file rule" because the focus should be on the class, not the class representatives. *See*, *e.g.*, *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010). With that focus, the necessary overlap in parties is clear, as is the overlap in causes of action. The additional causes of action in *Thomas* are pled in the

alternative to achieve similar relief, yet they are not really necessary to a case settled before it was filed.  Further, the issue of overdraft fees charged on checks does not make the two cases different enough to support a conclusion that the District Court, sitting as the appointed MDL court to coordinate cases against numerous banks, abused its discretion.

As with its All Writs Act analysis, the District Court was no doubt aware that the JPML's decision on transfer would resolve whether *Thomas* is to be litigated in the MDL.  Since the *Thomas* court did not analyze the required class certification factors, it would be speculative to conclude that the issues in *Thomas* were appreciably different or broader than *Swift*.[21]  Though the motion to dismiss filed in *Thomas* four days prior to the motion for preliminary approval was a rouse to feign a defense of *Thomas*, BancorpSouth is on record as having challenged the legal sufficiency of the *Thomas* complaint, including the check claims.  [DE # 2603-3].

---

[21] Claims challenging overdraft fees charged on checks are suspect given that the U.C.C. authorizes the reordering of checks in the posting process.  *In re Checking Account Overdraft Litig.*, 694 F.Supp. 2d 1302, 1315-1316 (S.D. Fla. 2010) (discussing U.C.C. Section 4-303(b)).  The same does not hold true for debit card transactions, on which the U.C.C. is silent.  *Id.*  It is noteworthy that a review of the allegations specific to Plaintiff Melvin Thomas appears to reveal that he was not the victim of damages associated with re-sequencing debit card transactions. [DE # 2603-3 at ¶¶35-37].  As such, it appears that he was added as a class representative to manufacture a distinction between *Swift* and *Thomas*.

Two other observations should be made by the Court in concluding that *Thomas* is not a measurably broader case so as to prevent application of the "first to file rule." The District Court has certified subclasses in *Swift* that cover all states within BancorpSouth's footprint, meaning all victims of the re-sequencing of debit card transactions will be represented by Swift at trial.[22] Second, there is no way to judge that the "*Thomas/Lawson* settlement [was] significantly different than *Swift* as it [was] substantially broader than *Swift*," *see* Brief at 45, given that there is no *Swift* settlement to compare.[23]

Finally, the fact that BancorpSouth believes that its orchestrated settlement-class definition excludes only one accountholder from a class of hundreds of thousands of accountholders, Swift, further supports the Injunction. The Bank intentionally chose not to include Swift and give him the option to opt out or object to the settlement. This gamesmanship directed at an MDL court's jurisdiction was not tolerated by the District Court and should not be by this Court. Swift disputes

---

[22] The District Court's class certification order does not foreclose amendments to add potential class representatives from states other than Arkansas. [DE # 2666 at 22 n. 21 & n.22]. The *Thomas* plaintiffs, who are both from Arkansas, purport to pursue all causes of action in every state within the Bank's footprint. Particularly with regard to the state deceptive trade practices act claims, the *Thomas* plaintiffs' standing to pursue claims for accountholders from other states is suspect. *See Checking Acct. Overdraft Litig.*, 694 F. Supp. 2d at 1324.

[23] A reference point for the Court is that the monetary fund proposed in the *Thomas* settlement is $1.75 million, while the damage demand made by Swift exceeded $42 million. [DE # 2666 at 3-4].

the Bank's interpretation of the since-vacated *Thomas* class definition. As argued above, everyone in the certified *Swift* class should be deemed to have been excluded from *Thomas* because the *Thomas* class definition excluded "any person with an interest in a BancorpSouth Account that is subject to an active lawsuit against BancorpSouth, in any court that makes allegations similar to the allegations made in the Action." [DE # 2603-7 at 2].

Judged against one another, the District Court properly exercised its discretion in concluding that the progress made in *Swift* was sufficient to support application of the "first to file rule." *See Moses H. Cohen Mem'l Hosp. v. Mercury Constr. Corp.*, 480 U.S. 1, 22 (1983).

## IV. THE POLICY FAVORING CLASS ACTION SETTLEMENTS SHOULD NOT SUPPORT BANCORPSOUTH'S DECEPTIVE CONDUCT.

BancorpSouth refers to three cases that settled outside the MDL to support its argument that class action settlements are favored such that *Thomas* should proceed undeterred. JPML precedent confirms that "settlement matters are appropriate pretrial proceedings subject to centralization [in the MDL court] under §1407." *See Managed Care*, 246 F. Supp. 2d at 1365. Thus, BancorpSouth should not argue that the District Court should have no control over settlements involving the Bank. *See* Brief at 49. In addition to this error, BancorpSouth refers to settlements involving Fifth Third Bank, National City Bank, and IBERIABANK,

without accurately advising the Court about why those settlements do not provide precedent for its argument. *Id.*

First, the class settlement involving IBERIABANK was completed in this MDL. [DE # 2008 and 2657]. A copycat action had been filed against that bank, and when the existence of a proposed settlement became public, a similar motion seeking injunctive relief under the All Writs Act and "first to file rule" was immediately filed. [DE # 1608]. Prior to that motion being decided, all interested parties agreed to modify the settlement terms and to have the second-filed action transferred to the MDL. [DE # 1708]. Thus, opposition to JPML transfer was withdrawn, and the MDL settlement approval process was recently completed.

The settlements in *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011), and *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179 (D.D.C. Dec. 1, 2011), both occurred in cases that were filed **before** competing MDL cases against those two banks, allowing those cases to develop to a settlement stage before the MDL progressed. *See In re: Checking Account Overdraft Litig.,* 715 F. Supp. 2d 1358 (J.P.M.L. 2010) (vacating Fifth Third Bank conditional transfer order); *In re: Checking Account Overdraft Litig.,* MDL No. 2036 (J.P.M.L.) [DE # 289] (vacating National City Bank conditional transfer order). Opposition to those class settlements was made in each case on behalf of the plaintiffs and putative class members in the later-filed MDL cases, but the settlements were approved. Thus,

those cases are akin to *Grider* (discussed *supra* pp. 23-24), but clearly distinct from *Swift*, which had developed over 18 months, without notice of either *Lawson* or *Thomas*. Though the policy favoring class settlements is strong, *see* Brief at 50-51, a reversal of the Injunction in light of BancorpSouth's deceptive conduct would only ratify and encourage such conduct in the future.

## V. THE DISTRICT COURT'S USE OF AN ORDER DRAFTED BY APPELLEE'S COUNSEL – AT THE COURT'S DIRECTION – IS PERMISSIBLE.

This Court should quickly discard BancorpSouth's argument that the District Court improperly requested and utilized a order drafted by Appellee's counsel. At the conclusion of the April 18, 2012 hearing, Judge King instructed Swift's counsel to submit a "rough draft" of an order that should be copied on BancorpSouth's counsel [DE # 2647 at 93], which was submitted on April 23, 2012 with detailed record citations and focused on matters that Judge King addressed during the hearing. [DE # 2648]. BancorpSouth asserted written objections to the draft order. [DE # 2648]. The District Court deliberated over and modified the draft before entry of the Injunction on April 30, 2012. [DE # 2666].

A side-by-side review of the proposed and entered orders will reveal that the District Court personalized the Injunction to address matters of importance to the Court. For example, the District Court contrasted the $1.75 million proposed *Thomas* settlement fund with the demand for damages in excess of $42 million

from Swift's to Bancorpsouth's counsel. *Id.* at 3.

BancorpSouth's argument about the form of the Injunction should be chalked up to its disagreement with the District Court's unbiased view of the evidence before the court. Merely pointing to instances where the existence of *Swift* and recently completed class certification briefing were disclosed to Judge Dawson in *Thomas*, *see* Brief at 15-17, should not override more important issues that the Bank did not disclose to Judge Dawson prior to his on-the-spot preliminary class settlement approval at the conclusion of a brief hearing.[24]

The District Court observed that neither before nor during the preliminary approval hearing did BancorpSouth disclose that its counsel "(a) had exchanged settlement-related information with Plaintiff's counsel in *Swift* while simultaneously pursing secret settlement negotiations with the in [sic] *Lawson/Thomas* parties; and (b) had not informed the district court, the PEC or Swift's counsel of the existence of *Lawson* or *Thomas* or the proposed class action settlement." [DE # 2666 at 6].

BancorpSouth is disingenuous in attempting to portray errors in the Injunction regarding what the parties made Judge Dawson aware of about *Swift* to induce him to preliminarily approve a settlement in *Thomas*. This is most apparent in the Bank's suggestion that "*Swift* was not far advanced procedurally before the

---

[24] The full transcript of the preliminary approval hearing in *Thomas* consists of 28 pages. [DE # 2620-3].

*Thomas/Lawson* class was certified, and most of the same events had occurred in *Thomas/Lawson*. . . ." *See* Brief at 16 n.11. In *Thomas*, there had yet to be a ruling on a motion to dismiss or an answer filed. In fact, as noted above, BancorpSouth filed its motion to dismiss in *Thomas* even though it already inked the Settlement Agreement, and with no intent of litigating that motion. Four days later the *Thomas* plaintiffs filed their unopposed motion for preliminary class settlement approval. Contested discovery only occurred in *Swift*,[25] leading to full and contested class certification briefing in *Swift* before the preliminary approval hearing.

Another example of the Bank's inaccurate critique of the District Court's Injunction pertains to the responses to Judge Dawson's pointed questions and concerns about the impact on *Swift*. Albeit incorrect, the *Thomas* parties clearly portrayed *Swift* to be a wholly undeveloped, insignificant case. [DE # 2620-3 at 15, 19, 21-23]. Therefore, the District Court aptly concluded that Judge Dawson was not made fully aware that a decision on class certification in *Swift* was imminent, and was affirmatively mislead by BancorpSouth's counsel's statement that *Thomas* would never be transferred by the JPML. [DE # 2666 at 7-8]. As it

---

[25] Although BancorpSouth later told the District Court that it produced the thousands of documents produced in *Swift* to the *Thomas* plaintiffs for settlement purposes, there is no other record evidence to substantiate what was actually delivered to or considered by the *Thomas* plaintiffs' counsel prior to agreeing to settle for only $1.75 million.

turned out, a conditional transfer order of *Thomas* was entered on April 19, 2012, one day after the hearing during which the Injunction was orally granted and before it was entered in written form on April 30, 2012. And Judge Dawson has since clearly signaled, in his June 8, 2012 order, his belief that BancorpSouth did not fairly disclose to him the extent of the proceedings in *Swift*. *See* DE # 2770-1 at 2.

## CONCLUSION

The District Court acted well within its discretion as the appointed MDL court in entering the Injunction. Assuming that this case has not been rendered moot, Swift respectfully requests that this Court affirm the District Court's Injunction.

Respectfully submitted,

*s/Stephen F. Rosenthal*

| | | |
|---|---|---|
| Stephen F. Rosenthal | Bruce S. Rogow | David M. Buckner |
| Aaron S. Podhurst | Bruce S. Rogow, P.A. | Stuart Z. Grossman |
| Robert C. Josefsberg | Broward Financial Ctr. | Robert C. Gilbert |
| Steven C. Marks | 500 E. Broward Blvd. | Seth E. Miles |
| Peter Prieto | Suite 1930 | Grossman Roth, P.A. |
| John Gravante | Ft. Lauderdale, FL 33394 | 2525 Ponce de Leon Blvd. |
| Matthew Weinshall | Tel.: (954) 767-8909 | Suite 1150 |
| Podhurst Orseck, P.A. | | Coral Gables, FL 33134 |
| 25 W. Flagler St. – Ste. 800 | | Tel.: (305) 442-8666 |
| Miami, FL 33130 | | |
| Tel.: (305) 358-2800 | | |

Jonathan M. Streisfeld
Jeffrey M. Ostrow
Kopelowitz Ostrow Ferguson
Weiselberg Keechl
200 S.W. First Ave., 12th Floor
Fort Lauderdale, Florida  33301
Tel:  (954) 525-4100

Darren T. Kaplan
Chitwood Harley Harnes LLP
2300 Promenade II
1230 Peachtree Street
Atlanta, GA 30309
Tel.:  (404) 873-3900

**Counsel for Appellee**

## CERTIFICATE OF COMPLIANCE

Counsel for Appellant hereby certifies that the type style utilized in this brief is 14 point Times New Roman proportionally spaced, and there are 13,692 words in the brief.

*s/Stephen F. Rosenthal*
Stephen F. Rosenthal

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing to: Eric Jon Taylor, Esq., ejt@phrd.com, William J. Holley, II, Esq., wjh@phrd.com, David B. Darden, Esq., dbd@phrd.com, Darren E. Gaynor, Esq., deg@phrd.com, Parker Hudson, Rainer & Dobbs LLP, 1500 Marquis Two Tower, 285 Peachtree Center Ave., N.E., Atlanta, Georgia 30303.

*s/Stephen F. Rosenthal*
Stephen F. Rosenthal, Esq.
Florida Bar No. 0131458